IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LAVANYA VISWANATHAN IYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-254 (RDA/JFA) |
| ) | |
| UNITED STATES CITIZENSHIP AND ) | |
| IMMIGRATION SERVICES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 10; 13) in this Administrative Procedure Act ("APA") suit for review of final agency action. The Court dispenses with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the administrative record, the parties' motions for summary judgment, and the parties' briefing, the Court DENIES Plaintiff's Motion for Summary Judgment (Dkt. 10) and GRANTS Defendants' Motion for Summary Judgment (Dkt. 13) for the reasons that follow.

I. BACKGROUND

The instant case involves the U.S. Citizenship and Immigration Services' ("USCIS") adjudication of Lavanya Viswanathan Iyer's ("Plaintiff") applications to change her status to an education-based nonimmigration student status called "F-1" and for optional practical training ("OPT") work authorization. Following a brief overview of the statutory and regulatory background, the factual and procedural history of the instant case are summarized below.

A. Statutory and Regulatory Background

1. F-1 Status

With F-1 nonimmigrant status, a student may lawfully reside in the United States while enrolled at approved schools. 8 U.S.C. § 1101(a)(15)(F). F-1 nonimmigrants are admitted to the United States for "duration of status," that is, "the time during which an F-1 student is pursuing a full course of study at an educational institution approved by [USCIS] for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5)(i).

To obtain F-1 status, a nonimmigrant who is already residing in the United States with a different legal status must file a Form I-539 Application to Extend/Change Nonimmigrant Status. USCIS publishes public instructions on its website for individuals seeking to submit such a form. *See Instructions for Application to Extend/Change Nonimmigrant* Status, U.S. Citizenship and Immigration Services, https://www.uscis.gov/sites/default/files/document/forms/i-539instr.pdf (last visited Jan. 19, 2023). On the first page of the instructions, USCIS advises: "we suggest you file at least 45 days before your stay expires or as soon as you determine your need to change or extend status." *Id.*

An applicant must also obtain a Form I-20 Certificate of Eligibility for Nonimmigrant Student Status ("Form I-20") from the institution that she plans to attend. 8 C.F.R. § 214.2(f)(1)(i)(A). Approved schools use a web-based system, called the Student Exchange and Visitor Information System ("SEVIS"), to generate Form I-20s on behalf of students applying for F-1 status. *See* 8 C.F.R. § 214.3(g). Once the Form I-20 is issued, the Designated School Official ("DSO") is responsible for maintaining the individual student's record. *Id.*

2. OPT Work Authorization

Pursuant to the U.S. Department of Homeland Security's ("DHS") regulations, a student holding F-1 status may "apply for authorization for temporary employment for practical training directly related to the student's major area of study." 8 C.F.R. § 214.2(f)(10)(ii)(A). While international students holding many different nonimmigrant statuses are eligible to engage in full-time study, only those holding F-1 nonimmigrant status can qualify for OPT. *See* Dkt. 1, Ex. 1 (*Nonimmigrants: Who Can Study*, U.S. Immigration and Customs Enforcement); 8 C.F.R. § 214.2(f)(10) ("Practical training [which includes OPT] may be authorized to an F-1 student . . . ."). A student lawfully studying under a different nonimmigrant status must therefore obtain a change to F-1 status to participate in OPT.

There is a strict filing window for applying for OPT—up to 90 days prior to program completion and no later than 60 days following program completion. 8 C.F.R. § 214.2(f)(11)(i)(B)(2). To apply, a student must request a Form I-20 from her DSO containing a recommendation for OPT. *Id.* § 214.2(f)(11)(i). The student will submit the Form I-20 along with an I-765 application for OPT. *Id.* § 214.2(f)(11)(i)(A). Students still awaiting decisions on their applications to change to F-1 status face a SEVIS-created roadblock because the system will not allow the DSO to generate the Form I-20 with an OPT recommendation until the student's F-1 status is approved. In those situations, DHS advises that the DSO can provide the student with a letter of explanation. *See DSOs: Send USCIS a Letter of Explanation If You Cannot Issue Updated Forms I-20*, U.S. Department of Homeland Security, Study in the States (Sept. 15, 2015), https://studyinthestates.dhs.gov/2015/09/dsos-send-uscis-letter-explanation-if-you-cannot-issue-updated-forms-i-20. DHS explains that providing such a letter "may prevent the student's application from simply being denied because the signed Form I-20 is missing." *Id.* The guidance

3

further provides that "USCIS will work with" these students so that they can ultimately provide the required Form I-20 once the SEVIS issue is rectified. *Id.*

### B. Factual Background[1]

Plaintiff entered the United States on January 6, 2020 on an H-4 visa, which is available for dependent spouses of individuals who have been granted H-1B work authorization. Administrative Record ("AR") 1 000099.[2] Plaintiff subsequently applied and was admitted to the University of San Francisco's one-year master's program in Marketing Intelligence that was set to begin on August 14, 2020. AR1 000091.

On August 1, 2020, two weeks before the start of her master's program, Plaintiff filed an I-539 application with USCIS' California Service Center to change her immigration status from an H-4 visa holder to an F-1 visa holder. AR1 000011. In support of her application, Plaintiff submitted a Form 1-20 dated July 10, 2020, indicating that her master's program would start on August 14, 2020 and run through August 13, 2021. AR1 000091.

As her graduation date was approaching, Plaintiff submitted an I-765 Application for Employment Authorization on July 14, 2021, seeking permission to begin OPT following her graduation. AR2 03. In her application, Plaintiff identified herself as an eligible F-1 student seeking post-completion OPT. AR2 07 ¶ 27. Because Plaintiff submitted an I-765 application before USCIS had adjudicated her I-539 application, her DSO was unable to generate in SEVIS a

---

[1] The facts set forth in this section are taken from the uncontradicted administrative record submitted to the Court. *See Krichbaum v. Kelley*, 844 F. Supp. 1107, 1110 (W.D. Va. 1994) ("When the court, as here, reviews the decision reached by an administrative agency, the summary judgment motion stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review."), *aff'd*, 61 F.3d 900 (4th Cir. 1995).

[2] The Court will refer to the administrative record for Plaintiff's I-539 application to change status to F-1, *see* Dkt. 8, as "AR1," and the Court will refer to the administrative record for Plaintiff's I-765 application for OPT work authorization, *see* Dkt. 9, as "AR2."

Form I-20 with an OPT recommendation that Plaintiff needed to include with her application. AR2 15. Following the Study in the States guidance, Plaintiff included a letter of explanation from her DSO as to why Plaintiff could not submit the required form and recommendation. *Id.* The letter also requested that, instead of denying Plaintiff's OPT application, USCIS issue a Request for Evidence ("RFE") so that Plaintiff could provide an updated Form I-20 once her I-539 application is adjudicated. *Id.*

On August 13, 2021, Plaintiff completed her master's program. AR1 000091. At that time, she had not yet received a decision on her I-539 application. On September 16, 2021, one month past the academic end date entered by the University of San Francisco in Plaintiff's SEVIS record, Plaintiff's SEVIS record was cancelled. AR1 0000001-2. Although the University requested an adjustment of the record to re-activate Plaintiff's SEVIS status, because the end date of Plaintiff's studies remained the same, such an adjustment could not be made. *Id.* On September 20, 2021, USCIS denied Plaintiff's I-765 application for OPT, reasoning that the school had not updated Plaintiff's SEVIS record to recommend OPT or provided a Form I-20 indicating that recommendation. AR2 01-02.

Later, on October 5, 2021, USCIS issued an RFE, seeking additional information necessary to complete the adjudication of Plaintiff's I-539 application. AR1 000067-70. In that RFE, USCIS explained that "[a] review of [SEVIS] indicates that as of September 16, 2021 your nonimmigrant student status was cancelled," and further stated that "[i]f the referenced SEVIS record is incorrect, your DSO must . . . correct the electronic system before any requested change or extension of status may be granted." AR1 000068-69.

Plaintiff submitted a response to the RFE, explaining that, because her course of study had concluded, the University of San Francisco was not able to activate her SEVIS record. AR1

5

000072. She also submitted a letter from the University of San Francisco confirming this explanation. AR1 000060. Finally, on November 23, 2021, USCIS issued a decision denying Plaintiff's I-539 application for a change to F-1 status. AR1 000030-32. In its decision, USCIS reasoned that Plaintiff's SEVIS record had been terminated on September 16, 2021 and she did not have a valid Form I-20 at the time of adjudication. AR1 000031.

### C. Procedural Background

Following USCIS' denials of her I-539 and I-765 applications, Plaintiff brought the instant action against USCIS and Ur M. Jaddou, the Director of USCIS, in her official capacity ("Defendants"), seeking judicial review under the APA of Defendants' decisions. Dkt. 1. On May 23, 2022, Plaintiff moved for summary judgment on her claims, requesting that the Court "order USCIS to grant her the immigration status and work authorization the agency has . . . withheld from her." Dkt. Nos. 10; 11 at 1-2. Defendants then filed their own motion for summary judgment on June 6, 2023, urging the Court to find that USCIS' decisions to deny both applications were in accordance with statutory and regulatory guidance, and thus, are entitled to deference. Dkt. Nos. 13; 14 at 9-10. On June 16, 2023, Plaintiff filed her Opposition to Defendants' motion and Reply in support of her own motion (Dkt. 16),[3] and on June 27, 2022, Defendants filed a Reply (Dkt. 18) in support of their motion.

### II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In APA actions, however, the typical summary judgment standard

---

[3] Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment is filed both at docket entries 16 and 17. For the sake of brevity, the Court will cite to Dkt. 16.

is modified because judicial review of an agency's decision is limited to the underlying administrative record, which contains all of the facts relevant to the court's review. *See* 5 U.S.C. § 706. Unless a party contradicts some portion of the administrative record, "[t]he key difference in an APA case is that 'the presence or absence of a genuine dispute of material fact is not an issue.'" *LivinRite, Inc. v. Azar*, 386 F. Supp. 644, 650 (E.D. Va. 2019) (quoting *Hyatt v. U.S. Patent & Trademark Office*, 146 F. Supp. 3d 771, 780 (E.D. Va. 2015)). Unlike the consideration of traditional Rule 56 dispositions, in APA cases involving review of agency action, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Shipbuilders Council of Am. v. U.S. Dep't of Homeland Sec.*, 770 F. Supp. 2d 793, 802 (E.D. Va. 2011) (internal citations omitted).

The APA authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Such a claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete action that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). The plaintiff must then show that the agency unreasonably delayed or unlawfully withheld processing its decision. 5 U.S.C. § 555(b).

The APA also provides that agency decisions may be set aside "if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983). A court reviewing final agency action asks whether the agency's "written opinion made a 'rational connection' between that evidence and its conclusion." *Downey v. U.S. Dep't of the Army*, 110 F. Supp. 3d 676, 687 (E.D. Va. 2015) (quoting *Ohio Valley Envtl. Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009)). And though a "court must consider whether the agency considered the relevant factors and whether a clear error of judgment was made," *Aracoma Coal Co.*, 556 F. 3d at 192, "[t]he court is not empowered to substitute its judgment for that of the

7

agency." *Friends of Buckingham v. State Air Pollution Control Bd.*, 947 F.3d 68, 80 (4th Cir. 2020) (quoting *Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 753 (4th Cir. 2019)). Indeed, "[r]eview under this standard is highly deferential," and there is a "presumption in favor of finding the agency action valid." *Ohio Valley Envtl. Coal v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009).

### III. ANALYSIS

Plaintiff seeks relief under 5 U.S.C. § 706(1), which allows a court to "compel agency action unlawfully withheld or unreasonably delayed," as well as under 5 U.S.C. § 706(2), which permits courts to set aside an agency action that is arbitrary or capricious. *See* Dkt. 1 at 10-12. The Court addresses Plaintiff's claims under Sections 706(1) and 706(2) of the APA in turn.

### A. Relief Under 5 U.S.C. § 706(1)

Under the applicable standard of review, this Court finds that granting relief under 5 U.S.C. § 706(1) would not be appropriate. Plaintiff maintains that Defendants unlawfully withheld a decision on her I-539 application until after she had graduated and likewise unlawfully withheld OPT employment authorization from her as a result of their own delayed processing of her I-539 application. Dkt. 11 at 11-12. Plaintiff's argument misapprehends the nature of Section 706(1) of the APA. This provision applies only when "an agency failed to take a discrete agency action that it is required to take." *Norton*, 542 U.S. at 64. But here there is nothing to compel. It is undisputed that USCIS has already issued a decision on both applications at issue in the instant case—the I-539 application on November 23, 2021 and the I-765 application on September 20, 2021. And Section 706(1) of the APA does not authorize a court to undo an agency action on the basis of a purportedly unreasonable delay. Put simply, "[a] plaintiff who does not like an agency's action cannot use [Section] 706(1) to compel the agency to take the opposite action." *Olenga v. Gacki*,

507 F. Supp. 3d 260, 279 (D.D.C. 2020). Accordingly, because USCIS has already adjudicated Plaintiff's I-539 and I-765 applications, her request for relief under Section 706(1) is moot.

### B. Relief Under 5 U.S.C. § 706(2)

The Court next considers whether USCIS' decisions to deny Plaintiff's I-539 application to change to F-1 status and her I-765 application for OPT work authorization were arbitrary and capricious under Section 706(2) of the APA. The Court addresses each agency adjudication in turn.

#### 1. Form I-539 (F-1)

Plaintiff first argues that USCIS took an unreasonably long time to adjudicate her I-539 application and that her application was arbitrarily denied due to the happenstance of USCIS only getting around to processing her I-539 application after she had already graduated. Dkt. Nos. 11 at 11; 16 at 1. In response, Defendants counter that Plaintiff's challenge to USCIS' delay is "no more than an assertion that her application should have been treated differently than the average application despite the fact that she did not apply in the time that USCIS advised." Dkt. 14 at 13.

In support of her position, Plaintiff points to USCIS' public statement that the agency takes just 30.5 minutes (.51 hours) to adjudicate a Form I-539. Dkt. 11 at 6 (citing U.S. Citizenship & Immigration Servs. Fee Schedule & Changes to Certain Other Immigration Benefit Request Requirements, 84 Fed. Reg. 62,280, 62,292 (Nov. 14, 2019)). Nonetheless, Plaintiff explains, USCIS issued her an RFE more than 14 months after she had filed her I-539 application and then took another month to issue a decision on her I-539 application. Dkt. 11 at 6; *see also* AR1 000030-32 (USCIS' denial of Plaintiff's I-539 application).

At the outset, the Court notes that other federal district courts have rejected similar arguments, finding that "knowing how many 'adjudication hours' are required to 'adjudicate' a

9

visa tells the court nothing about the length of a queue or what is a reasonable processing time . . . ." *Tekle v. Blinken*, No. 21-1655, 2022 WL 1288437, at *4 (D.D.C. Apr. 29, 2022). Indeed, arguments based on adjudication hours "assume[] that there are no other visa applicants who have been waiting longer" or "whom the Government has otherwise deemed a higher priority." *Khan v. Blinken*, No. 21-1683, 2021 WL 5356267, at *4 (D.D.C. Nov. 17, 2021). In essence, statistics suggesting adjudication hours in these kinds of dispositions are not static or hard-and-fast.

In the instant case, Plaintiff's unreasonable delay argument is further undermined by the fact that USCIS was faced with a severe backlog of immigration-related applications during the early stages of the COVID-19 pandemic when Plaintiff applied. *See, e.g.*, *Ray v. Cuccinelli*, No. 20-CV-06279-JSC, 2020 WL 6462398, at *8 (N.D. Cal. Nov. 3, 2020) (discussing backlogs in I-539 and I-765 applications caused by pandemic); *Gorgadze v. Blinken*, No. CV 21-2421 (JDB), 2021 WL 4462659, at *2-3 (D.D.C. Sept. 29, 2021) (discussing COVID-19 delays in diversity visa operations); *Said v. United States Dep't of Homeland Security*, No. 20-CV-02316-CMA-NYW, 2020 WL 9432922, at *4 (D. Colo. Nov. 3, 2020) (acknowledging delays in plaintiff's naturalization application due to COVID-19 pandemic). As such, adjudicating Plaintiff's application by an earlier date would have "necessarily [meant] additional delays for other applicants—many of whom undoubtedly face[d] hardships of their own." *Khan*, 2021 WL 5356267, at *4. Thus, while USCIS' failure to adjudicate Plaintiff's I-539 application before she graduated from her master's program is troubling, the Court is hesitant to condemn USCIS' choice of priorities. *See Gonzalez v. Cuccinelli*, No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021) (opining that "courts generally 'have no basis for reordering agency priorities'" and that "the political branches are best-suited to alleviate [an agency's] crippling delays" (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991))).

And Plaintiff's failure to submit her I-539 application in the time that USCIS makes its advisement further counsels against a finding that the agency's adjudication timing was unreasonable. USCIS' public guidance instructs applicants to apply "as soon as" they know they will need to change their status. *Instructions for Application to Extend/Change Nonimmigrant Status*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/sites/default/files/document/forms/i-539instr.pdf (last visited Jan. 19, 2023). In the instant case, Plaintiff was aware of her admission to the master's program, at the very least, before June 2020, when her admission letter indicated that her deposit was due. *See* AR1 000089-90. Yet Plaintiff did not submit her I-539 application until two weeks before her program start date. *See* AR1 000001 (reflecting August 14, 2020 start date); AR1 000011 (reflecting August 1, 2020 submission of I-539 application).

Plaintiff next raises a "programming" concern regarding USCIS' failure to adjudicate her I-539 application by the time she graduated. Specifically, she asserts that USCIS' delayed adjudications of I-539 applications like hers "would allow USCIS to unilaterally put OPT out of reach of many applicants for whom it was intended." Dkt. 11 at 15. In support of her argument, Plaintiff relies heavily on *Gomez v. Trump*. 485 F. Supp. 3d 145, 196 (D.D.C.), *amended in part*, 486 F. Supp. 3d 445 (D.D.C. 2020), *amended in part sub nom. Gomez v. Biden*, No. 20-CV-01419 (APM), 2021 WL 1037866 (D.D.C. Feb. 19, 2021). There, a group of diversity visa applicants challenged USCIS' "unreasonable delay" in processing their visa applications. *Id.* at 195-98. The district court observed that, because diversity visa lottery winner applications expire, by statute, at the end of the fiscal year in which they are submitted, "the State Department could effectively extinguish the diversity program for a given year by simply sitting on its hands and letting all pending diversity visa applications time out." *Id.* at 196. The court concluded that this would

11

frustrate the intent of the program and agreed with the plaintiffs that the government had unreasonably delayed the processing of their applications.  *Id.*

The district court's reasoning in *Gomez* does not have the same influence here, however. That case involved an Executive Order that prevented USCIS from adjudicating any diversity visas during 2020.  *Id.* at 157.  Thus, a ruling against the plaintiffs would have resulted in 55,000 diversity visas authorized by Congress going unused because of the adjudication delay that the Executive Order imposed.  *Id.* at 196.  By contrast, Plaintiff does not allege that USCIS stopped adjudicating F-1 applications altogether during the relevant period.  Nor does Plaintiff provide any evidence beyond mere speculation regarding the potential wider effects of USCIS' timing.  In sum, USCIS' adjudication timing in the instant case posed a *specific* problem to Plaintiff because of the one-year length of her master's program and her decision to wait to apply to change her status until two weeks before her program began.  Consequently, the facts at hand fall far short of the programmatic concerns at issue in *Gomez*.

Ultimately, this Court finds that USCIS' decision to deny Plaintiff's I-539 application, at a minimum, bears a "rational connection" to the facts found in the administrative record.  *See Downey*, 110 F. Supp. 3d at 687 (quoting *Ohio Valley Envtl. Coalition*, 556 F.3d at 192).  The regulatory framework is clear: in order to change status to F-1, an applicant must present a SEVIS Form I-20 indicating that she is enrolled or intends to be enrolled in a full course of study at an approved university.  *See* 8 C.F.R. § 214.2(f)(1)(i)(A).  And the administrative record demonstrates that, at the time of USCIS' adjudication of Plaintiff's I-539 application, the University of San Francisco had terminated Plaintiff's SEVIS record in the system because her master's program had ended, and therefore, Plaintiff did not have a valid Form I-20.  AR1 000001; AR1 000002;

AR1 000028. Accordingly, the Court declines to vacate USCIS' denial of Plaintiff's I-539 application.

## 2. Form I-765 (OPT Work Authorization)

Plaintiff next contends that USCIS' decision to deny her I-765 application was arbitrary and capricious because the agency failed to follow its parent agency's guidance and treated her differently than other like applicants. Dkt. 11 at 8-9, 11-14. Defendants counter that USCIS appropriately followed relevant DHS regulations in adjudicating Plaintiff's application, and that the one example that Plaintiff points to of an applicant whom USCIS purportedly afforded more favorable treatment is inapposite. Dkt. 14 at 10-11.

Plaintiff first directs the Court's attention to DHS' Study in the States guidance. That guidance provides that students who are still awaiting decisions on their I-539 applications, and therefore cannot obtain a Form I-20, should ask their DSO to submit a letter of explanation. *See DSOs: Send USCIS a Letter of Explanation If You Cannot Issue Updated Forms I*-20, U.S. Department of Homeland Security, Study in the States (Sept. 15, 2015), https://studyinthestates.dhs.gov/2015/09/dsos-send-uscis-letter-explanation-if-you-cannot-issue-updated-forms-i-20. Plaintiff claims that, following the Study in the States guidance, her DSO provided her with a letter to include with her I-765 application, explaining her situation and requesting that, instead of denying the application, USCIS issue an RFE so that Plaintiff could provide an updated Form I-20 once her I-539 application is approved. Plaintiff thus maintains that USCIS' denial of her I-539 application was arbitrary and capricious because, in its denial letter, the agency did not acknowledge the DSO's request or explain why it would not be honored.

While it is unfortunate that USCIS chose not to "work with" Plaintiff while she awaited a decision on her I-539 application, as the Study in the States guidance suggests the agency might,

13

the Court finds that the agency properly abided by relevant DHS regulations and guidance. *DSOs: Send USCIS a Letter of Explanation If You Cannot Issue Updated Forms I*-20, U.S. Department of Homeland Security, Study in the States (Sept. 15, 2015), https://studyinthestates.dhs.gov/2015/09/dsos-send-uscis-letter-explanation-if-you-cannot-issue-updated-forms-i-20. Specifically, 8 C.F.R. § 103.2(b)(8)(iii) provides USCIS with the discretion to either issue an RFE *or* deny an application where that application does not establish eligibility at the time of filing. The wording of the Study in the States guidance underscores this significant discretion afforded to USCIS. That guidance indicates that providing a letter from one's DSO "*may* prevent the student's application from simply being denied because the signed Form I-20 is missing," not that USCIS *must* consider or abide by a letter request from a DSO. *DSOs: Send USCIS a Letter of Explanation If You Cannot Issue Updated Forms I*-20, U.S. Department of Homeland Security, Study in the States (Sept. 15, 2015), https://studyinthestates.dhs.gov/2015/09/dsos-send-uscis-letter-explanation-if-you-cannot-issue-updated-forms-i-20 (emphasis added). Accordingly, USCIS' decision to deny Plaintiff's I-765 application was rationally based on legal authority.

Plaintiff further argues that USCIS' denial of her I-765 application was arbitrary and capricious in that the agency did not provide her with an accommodation that it has regularly provided other applicants—namely, issuing an RFE and suspending processing of the I-765 application until USCIS renders a decision on the underlying I-539 application. Dkt. 11 at 9. In an exhibit, Plaintiff provides the Court with an RFE that USCIS issued to an applicant who was awaiting adjudication of his I-539 application for reinstatement to F-1 status when he applied for OPT. *Id.*, Ex. 2. Like Plaintiff, his DSO was unable to enter the OPT recommendation into SEVIS and generate a Form I-20, so he submitted an explanatory letter along with his I-765 application.

14

*Id.*, Ex. 3.  Instead of immediately denying his application, USCIS issued an RFE to allow for processing of his I-539 to be completed.  *Id.*, Ex. 2.  As Defendants point out, however, Plaintiff only cites a single example of USCIS issuing an RFE rather than a denial in response to a DSO's letter of explanation.[4]  Moreover, the proposed comparator's application is readily distinguishable from Plaintiff's.  That applicant was applying for *reinstatement* of F1 status, rather than *a change to* F-1 status, meaning that he had already been granted F-1 student status at one point.  Consequently, Plaintiff's comparison falls far short of establishing that USCIS' treatment of her application was arbitrary.

In sum, just like USCIS' adjudication of Plaintiff's I-539 application, the agency's denial of her I-765 application was based on at least a rational basis in the administrative record.  In order to obtain approval for OPT work authorization, an applicant must have an OPT recommendation and Form I-20 from her DSO.  Because Plaintiff's I-765 application did not satisfy these requirements, USCIS' decision to deny her application comported with the relevant regulations and is entitled to deference.  Accordingly, the Court declines to vacate USCIS' denial of Plaintiff's I-765 application.

---

[4] In a footnote, Plaintiff proposes that discovery may be appropriate here to show that USCIS' treatment of that applicant was not a "one-off."  *See* Dkt. 16 at 7 n.4 (citing *Mayor of Baltimore v. Trump*, 429 F. Supp. 3d 128, 137 (D. Md. 2019)).  However, the case that Plaintiff cites expressly did not hold that discovery would be appropriate for the APA claims at issue there.  *See Mayor of Baltimore*, 429 F. Supp. 3d at 141 n.4.  Indeed, the court noted that federal courts have only recognized "narrow exceptions" to APA administrative record review, and a plaintiff must make a "strong showing of bad faith or improper behavior" to justify extra-record review.  *Id.* at 137-38 (internal quotation marks omitted).  Such an exception has no application here given that Plaintiff has made no suggestion of bad faith on the part of USCIS.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. 10) is DENIED and Defendants' Motion for Summary Judgment (Dkt. 13) is GRANTED.

The Clerk is directed to enter judgment for Defendants pursuant to Federal Rule of Civil Procedure 58 and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
February 17, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge